**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SUSANNE H. LINN and MELISSA KNESZ,** | : | **Civil Action No. 02-4417** |
| **Plaintiffs,** | : | |
| **v.** | : | **JURY TRIAL DEMANDED** |
| **NORTHAMPTON COUNTY, NORTHAMPTON COUNTY DEPARTMENT OF CORRECTIONS, TODD BUSKIRK, WARDEN, AFSCME LOCAL 2549,** | : | |
| **Defendants.** | : | |

**ORDER**

AND NOW, this ______ day of ________________, 2003, upon consideration of the Joint Motion in Limine of All Defendants to Preclude the Admission of Evidence Regarding the Tredinnick Report or documents Related Thereto, it is hereby ORDERED that Defendants' Motion is GRANTED.

BY THE COURT:

______________________________
Brody, J.

938037v3

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SUSANNE H. LINN and MELISSA KNESZ, Plaintiffs, | : | Civil Action No. 02-4417 |
| v. | : | JURY TRIAL DEMANDED |
| NORTHAMPTON COUNTY, NORTHAMPTON COUNTY DEPARTMENT OF CORRECTIONS, TODD BUSKIRK, WARDEN, AFSCME LOCAL 2549, Defendants. | : | |

## JOINT MOTION IN LIMINE OF ALL DEFENDANTS TO PRECLUDE THE ADMISSION OF EVIDENCE REGARDING THE TREDINNICK REPORT AND UNRELATED LITIGATION

Defendants, by and through their undersigned counsel, hereby move for an Order precluding Plaintiffs from introducing evidence regarding the Tredinnick Report and unrelated litigation. The grounds for this motion are set forth in the accompanying Brief, which is incorporated herein by reference.

Linda M. Martin, Esquire
John R. Bielski, Esquire
Willig, Williams & Davidson
1845 Walnut Street
24th Floor
Philadelphia, PA 19103
(215) 656-3600

Attorneys for Defendant
AFSCME Local 2549

Dated: July 15, 2003

David J. MacMain, Esquire
L. Kristen Blanchard, Esquire
Dennis G. Young, Jr., Esquire
Montgomery, McCracken, Walker & Rhoads, LLP
123 South Broad Street
Philadelphia, PA 19109
(215) 772-1500

Attorneys for Defendants,
Northampton County, Northampton County, Department of Corrections, and Todd Buskirk

Dated: July 15, 2003

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SUSANNE H. LINN and MELISSA KNESZ,** | : | **Civil Action No. 02-4417** |
| **Plaintiffs,** | : | |
| **v.** | : | **JURY TRIAL DEMANDED** |
| **NORTHAMPTON COUNTY, NORTHAMPTON COUNTY DEPARTMENT OF CORRECTIONS, TODD BUSKIRK, WARDEN, AFSCME LOCAL 2549,** | : | |
| **Defendants.** | : | |

**BRIEF IN SUPPORT OF JOINT MOTION IN LIMINE TO PRECLUDE THE ADMISSION OF EVIDENCE REGARDING THE TREDINNICK REPORT AND UNRELATED LITIGATION**

## I. INTRODUCTION AND FACTS

This is an employment discrimination case. Plaintiffs Susanne Linn and Melissa Knesz (collectively, "Plaintiffs"), have asserted claims against Defendants Northampton County, Northampton County Department of Corrections, Todd Buskirk, and AFSCME Local 2549 based upon Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., the Public Employee Relations Act, 43 P.S. § 1101.201 et seq., and the Pennsylvania Human Relations Act, 43 P.S. §951 et seq. (See copy of First Amended Complaint, attached hereto as Exhibit "A").

### A. EEOC and Federal Complaints

On or about March 29, 2001, Plaintiffs Susanne Linn and Melissa Knesz filed complaints with the Equal Employment Opportunity Commission alleging employment discrimination on the basis of sex. (See copies of their Complaints, attached hereto as Exhibit "B"). The

complaints contained allegations similar to those advanced in the First Amended Complaint filed in the instant matter, to wit, complaints of disparate treatment based upon sex.

On or about December 4, 2002, Plaintiffs filed a First Amended Complaint with this Court, alleging discrimination only on the basis of sex.

**B. The Tredinnick Report**

Although Plaintiffs have not identified it as part of their Rule 26 Disclosures or in response to specific discovery requests seeking identification of all documents upon which they intend to rely at trial, Plaintiffs' counsel asked several witnesses during depositions about a document called the Tredinnick Report.

The Tredinnick Report ("Report") is a 61-page document written by former State Police Officer Arthur Tredinnick ("Tredinnick"). Tredinnick was hired by then-Director of Corrections Cynthia Marakovits to investigate the no-confidence vote of Jose Garcia, then Union president,[1] by union members. In the course of preparing the Report, Tredinnick interviewed over 60 COs, as well as over 20 inmates and ex-inmates, and asked those individuals to air their grievances regarding the manner in which the jail was being run. The subjects that arose in the interviews of the COs covered many topics, including the "work release" program applicable to inmates and differential treatment of inmates, information "leaks" from the jail to the media, and inappropriate fraternizing among officers. (A **sealed** copy of the Tredinnick Report is attached hereto as Exhibit "C").

The Report has been controversial since its production, and has been the subject of several discovery battles in more than one litigation matter. For example, in the matter of Miklas v. Northampton County, et al., Civ. No. 01-CV-2131 (E.D. Pa.), Defendants filed a Motion for

[1] Presently, Jose Garcia is the Internal Affairs Investigator at Northampton County Prison.

Protective Order to prevent the production of the report. (See copy of the Motion for a Protective Order, and Memorandum in Support Thereof, attached hereto as Exhibit "D"). Likewise, in the Doe matter, Defendants refused to produce the report until Plaintiff's counsel promised to maintain the confidentiality of the report. (See copy of the correspondence regarding confidentiality, attached hereto as Exhibit "E").

The Tredinnick Report is, at best, highly flawed, in that while Tredinnick listed the litany of complaints he heard from employees and inmates, he never actually attempted to verify the veracity of any of the allegations. Indeed, Tredinnick failed to take even the initial step of interviewing the individuals accused of various misdeeds to obtain their side of the story. The entire Report consists primarily of hearsay and few, if any, reports based upon first-hand knowledge of the "witnesses" interviewed.

Moreover, the limited testimony in this matter regarding the Report revealed that it contains double hearsay, fails to properly attribute statements, and, in at least one instance, misquotes an individual and implies a negative meaning to the misquote when the speaker in fact meant nothing negative by his statement.

For example, Lieutenant William Beers was asked during his deposition about his alleged statements to Tredinnick that Internal Affairs Investigator Lieutenant Jose Garcia was a "snake" and was not to be trusted.

Q. Do you trust Lieutenant Garcia?

A. Yes.

Q. Did you ever refer to him as a snake?

A. No.

Q. Do you have any idea why Arthur Tredinnick would have in this report that you considered Garcia a snake and you don't trust him?

    A. I never made that statement. I have no clue.

Q. You never talked to Arthur Tredinnick?

A. Yes, I did. . . I sat down and he asked me a couple questions. I just gave him general answers. . . He asked me what I thought about [Jose] Garcia and I said he was a sneak. I didn't say snake.

Q. What did you just say?

A. Sneak. He is a friend of mine, but he is a sneak. He does his job. That's all I basically said.

Q. What did you mean that Lieutenant Garcia is a sneak?

A. He likes to find things out in his investigations. Sometimes he asks certain questions to find out what you know or he would point blank ask you straight out if you didn't have any knowledge. Then he would ask another person to see if they had the knowledge. It's just his nature. That's the way he was. I was a CO with him. I have known him for 20 years.

Q. You it's his nature to be --

A. Sneaky. I don't mean it in a bad sense, though.

Beers dep.[2] at 45-47.

A further example of the unreliable nature of the Tredinnick Report is found in testimony by CO Barbara Morgan.

Q. Do you remember talking to Arthur Tredinnick? Do you remember telling him that [Defendant Todd] Buskirk hates women and talks down to them expressing that, quote: I bet he cringes every time he has to take orders from the director, end quote.

A. I was repeating what someone else said.

Q. You're saying that wasn't your opinion you were giving, you were just repeating what someone else said?

A. Right.

Q. Who said that?

[2] "Beers dep." refers to pages from the transcript of Lt. William Beers, taken on July 2, 2003, a copy of which is attached hereto as Exhibit "F."

    A. It was somebody - - I can't remember.

Morgan dep.[3] at 15.

Significantly, the Report makes no reference whatsoever to either Plaintiff or any events about which Plaintiffs complained in their EEOC complaints or the instant litigation. In short, the Report is flawed, unreliable and irrelevant.

C. **Doe v. Todd Buskirk, et al.**

Doe v. Todd Buskirk, et al., Civ. No. 00-CV-3368 (E.D. Pa., Brody, J.) was a race and disability discrimination case filed by an inmate of the Northampton County Department of Corrections. (See copy of Doe Amended Complaint, attached hereto as Exhibit "H"). Doe alleged, inter alia, that he was wrongfully denied medical treatment and a position in the "work release" program because of his race and his medical condition. The Doe matter did not involve claims of gender discrimination.

On July 11, 2003, three (3) days after the close of discovery, Plaintiffs revealed for the first time[4] that they intended to rely upon documents in the matter of Doe v. Todd Buskirk, et al., to support their claims in the instant litigation.[5] The revelation occurred because during depositions, Plaintiffs' counsel asked several witnesses about the Tredinnick Report. AFSCME counsel asked Plaintiffs' counsel on several occasions to produce this document, and only days before the close of discovery, Plaintiffs' counsel Jordan Yeager, Esquire, finally invited AFSCME counsel to his office to review the Tredinnick Report, as well as "other" documents

[3] "Morgan dep." refers to pages from the transcript of CO Barbara Morgan, taken on June 27, 2003, a copy of which is attached hereto as Exhibit "G."

[4] Plaintiffs did not reveal in their Rule 26 Disclosures or responses to discovery that they intended to rely upon the entire file from the Doe litigation. The Doe litigation involved the exchange of **thousands** of pages of documents.

[5] Doe settled out of court.

from "other cases" upon which Plaintiffs intended to rely at trial. AFSCME counsel asked Mr. Yeager to simply produce those documents, but he replied that there were "three (3) boxes of documents" and therefore it would be easier for AFSCME counsel to review them at his office because of the volume of documents.

Counsel for Northampton Defendants learned of this intended document review from AFSCME counsel and accompanied AFSCME counsel John Bielsky, Esquire, to the document review at Mr. Yeager's office on July 11, 2003. Upon arrival, Mr. Yeager expressed his displeasure with the presence of counsel for the Northampton Defendants. As it turns out, the presence of counsel was necessary as the Northampton Defendants learned for the **first time** in this litigation that Plaintiffs intended to rely upon the **entire** Doe file to support their case.

## II. ARGUMENT

### A. This Court May Properly Rule On This Motion in Limine.

The United States Court of Appeals for the Third Circuit has approved the use of pre-trial motions in limine to narrow the evidentiary issues for trial and eliminate unnecessary trial interruptions. Bradley v. Pittsburgh Bd. of Educ., 913 F.2d 1064, 1069 (3d Cir. 1990).

### B. The Tredinnick Report is in No Way Relevant to Claims of Gender Discrimination.

Putting aside for the moment the multiple levels of hearsay discussed above and below, the Report is irrelevant to Plaintiffs' claims of discrimination on the basis of sex.

Fed. R. Civ. P. 401 provides that "[r]elevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Fed. R. Civ. P. 401. Rule 402 provides that evidence which is not relevant is not admissible. Fed. R. Civ. P. 402.

Allegations of discriminatory practices do not automatically render admissible any document pertaining to any type of discrimination. See Oaks v. City of Philadelphia, No. 99-CV-2854, 2002 U.S. Dist. LEXIS 12151, at *21 (E.D. Pa. April 30, 2002) (writing that to the extent that "statements concern gender discrimination, they are not relevant" to claims based on race), affirmed 2003 U.S. App. LEXIS 4907 (3d Cir. Mar. 13, 2003); Simonetti v. Runyon, No. 98-2128, 2000 U.S. Dist. LEXIS 11407, at *16-*17 (D.N.J. Aug. 7, 2000) (writing that pursuant to Fed. R. Civ. P. 401, a plaintiff may not use evidence of one type of discrimination to prove discrimination of another type); Rauh v. Coyne, 744 F. Supp. 1181, 1183 (D.D.C. 1990) (finding that a plaintiff alleging gender discrimination may not introduce evidence of racial discrimination because it is not relevant under Federal Rules of Evidence 401).

In Oaks, the court examined the admissibility of a report issued by a mayoral task force on police discipline. 2002 U.S. Dist. LEXIS, at *20-21. The report recited statements from numerous witnesses who alleged that race and gender played a role in the imposition of discipline. Id. at *21. The Oaks Court held that evidence involving gender discrimination was inadmissible in a race discrimination suit. Id. Moreover, after questioning the reliability of hearsay scattered throughout the report, the Court found that the report was "entirely speculative and clearly insufficient to raise a reasonable inference of discrimination in [p]laintiff's case." Id. at *22.

Here, as in Oaks, the Tredinnick Report is void of any relevant allegations of gender discrimination and is "clearly insufficient to raise a reasonable inference of discrimination." See id. The Report concerns the "no-confidence" vote of non-party Jose Garcia by union members, not discrimination on the basis of sex. See Ex. C at 2. While there are sporadic, unfounded references to various acts of discrimination on the basis of gender, the focus of the Tredinnick

Report is an "investigation" of the actions of a non-party employee who has not been implicated in the alleged discrimination in the case at bar. Accordingly, the Tredinnick Report is irrelevant to the claims asserted by Plaintiffs in the instant matter and thus is inadmissible.

**C. Evidence Regarding the Tredinnick Report is More Prejudicial Than Probative, Particularly Given The Fact That The Report Consists Only Of Unsubstantiated Allegations Unrelated To The Case At Bar.**

Even if the Court determines that the Tredinnick Report is somehow relevant to the issues raised in this matter, the prejudicial impact of the report far outweighs the probative value.

Federal Rule of Evidence 403 provides that "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.

In a case similar to the present action, an employee alleged discrimination by her employer on the basis of sex. Rauh, 744 F. Supp. at 1183. The employee sought, however, to introduce categories of evidence alleging discrimination against employees and customers on the basis of race. Id. The employer filed a motion in limine arguing that the evidence of race discrimination was not relevant to the employee's allegations of sex discrimination. Id. In finding the proposed "evidence" inadmissible, the District Court wrote:

> [t]here is little reason in common experience to infer that an employer who discriminates against blacks in his employment decisions is also likely to discriminate against women. . . In view of the weak correlation between the two types of discrimination, the proposed evidence against black employees would be likely to be of little probative value but it would have very great potential for prejudice.

Id.

In this case, the allegations contained in the Tredinnick Report are unfounded, have never been substantiated and have nothing to do with Plaintiffs' claims. Such allegations will only

mislead the jury or confuse the issues by introducing testimony or documents to suggest that the unsubstantiated allegations contained in the Report validate Plaintiffs' allegations. See Morehouse v. Boeing Company, 501 F. Supp. 390 (E.D. Pa. 1980), affirmed without opinion, 639 F.2d 774 (3rd Cir. 1980).

Additionally, and as explained in Rauh, Defendants here should not have to defend against the myriad and disparate allegations contained in the Report, particularly since they are completely unrelated to the claims raised in this lawsuit. A jury may believe that the allegations contained in the Report demonstrate more likely than not that the Plaintiffs were victims of harassment and discrimination, not based upon relevant evidence of Plaintiffs' alleged harassment or on the truth of the allegations contained in the Report, but rather based on the mere existence of said allegations and the cumulative effect their existence has upon Plaintiffs' allegations.

The introduction of this type of testimony or documents can only confuse the issues, which will unfairly prejudice the Defendants. Plaintiffs cannot be allowed to use this purported evidence to buttress their own claims of discrimination by assembling a "parade of witnesses" about unrelated claims by County or Prison employees who are not part of this case. This Court therefore should preclude the introduction of evidence with regard to the Tredinnick Report.

**D. The Tredinnick Report Is Replete With Inadmissible Hearsay Testimony And Should Be Excluded.**

The Tredinnick Report's references to alleged statements clearly constitute inadmissible hearsay. Rule 801(c) of the Federal Rules of Evidence defines "hearsay" as:

> [A] statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.

Fed. R. Evid. 801(c).

Specifically, "testimony of the results of investigations made by other persons, offered as proof of the facts asserted out of court, are properly classed as hearsay." McCormick on Evidence, Section 249, p. 735 (Cleary Rev., 3rd ed. 1984). Here, the alleged statements were made out-of-court and are offered to prove the truth of the matter asserted -- that the allegations contained in the Tredinnick Report are true. See Oaks, 2002 U.S. Dist. LEXIS 12151, at *22 ("[a]s a threshold matter, given the multiple levels of hearsay contained in the task force report, its admissibility is questionable at best").

The Report's hearsay testimony is pervasive and rampant. For example:

- [John Doe 1][6], the rear neighbor of [John Doe 2] has reported a lot of activity at the house. See Ex. C, at 6, 2.1.
- It is reported that [John Doe 3] provided a supervisor from New Jersey with derogatory information. See Ex. C, at 9, ¶ 2.9.
- He was informed by [John Doe 4] that the mother was going to sue. See Ex. C, at 13, ¶ 2.12.
- He advised that [John Doe 5] "lied through his teeth" to [John Doe 6]. See Ex. C, at 13, ¶ 2.13.

As is obvious from these examples, unsubstantiated statements made by individuals regarding other individuals are presented as fact, without corroborating evidence. This is classic hearsay, and the Tredinnick Report must be excluded as inadmissible under Federal Rule of Evidence 801(c).

### E. Documents From Doe Are Irrelevant and More Prejudicial Than Probative to This Action.

The Doe matter involved, for the most part, claims of racial discrimination and denial of medical treatment, neither of which any bearing upon claims of gender discrimination. See

[6] All individuals referenced by the Tredinnick Report will be identified as "John Doe" for purposes of maintaining the confidential nature of the Report.

discussion, supra, at 7-9. As noted in the case law above, evidence of one form of discrimination is irrelevant and highly prejudicial to prove another form of discrimination. See Oaks, 2002 U.S. Dist. LEXIS 4907, at *21; Simonetti, 2000 U.S. Dist. LEXIS 11407, at *16-17; Rauh, 744 F. Supp. at 1183. The Doe file, therefore, is inadmissible in the present action.

Furthermore, it is significant that it was not revealed to Defendants until after the close of discovery that Plaintiffs intended to rely upon documents from the Doe file to support their claims. In light of the fact that the Doe matter involved the exchange of thousands of documents, this clearly is unfairly prejudicial to Defendants, who did not have the opportunity to cross-examine Plaintiffs on the Doe matter, or conduct any other discovery regarding the relevance of Doe. For these reasons, as well as those articulated supra, the Doe file must be precluded from admission into evidence at trial.

## III. CONCLUSION

Accordingly, Defendants respectfully request that this Court enter an Order precluding the admission of introducing evidence regarding the Tredinnick Report and unrelated litigation.

Linda M. Martin, Esquire
John R. Bielski, Esquire
Willig, Williams & Davidson
1845 Walnut Street
24th Floor
Philadelphia, PA 19103
(215) 656-3600

Attorneys for Defendant,
AFSCME Local 2549

Dated: July 15, 2003

David J. MacMain, Esquire
L. Kristen Blanchard, Esquire
Dennis G. Young, Jr., Esquire
Montgomery, McCracken, Walker & Rhoads, LLP
123 South Broad Street
Philadelphia, PA 19109
(215) 772-1500

Attorneys for Defendants,
Northampton County, Northampton County,
Department of Corrections, and Todd Buskirk

Dated: July 15, 2003

**CERTIFICATE OF SERVICE**

I hereby certify that on the 15th day of July, 2003, I caused a true and correct copy of the foregoing **Defendants Joint Motion in Limine of All Defendants To Preclude the Admission of Testimony Regarding the Tredinnick Report and Documents Related Thereto, and Brief in Support Thereof** to be served upon counsel for Plaintiffs by First Class Mail, Postage Prepaid, addressed as follows:

Anne P. Felker, Esquire
539 Center Street
P.O. Box 190
Bethlehem, PA 18016-0190

Jordan Yeager, Esquire
Boockvar & Yeager
714 Main Street
Bethlehem, PA 18017

Robert L. Sharpe, Jr. Esquire
328 West Broad Street
Quakertown, PA 18951

*Attorneys for Plaintiffs,*
*Susanne H. Linn and Melissa Knesz*

L. Kristen Blanchard