IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Susanne H. Linn and Melissa Knesz : | |
| Plaintiffs : | |
| : | Civil Action |
| v. : | |
| : | No. 02-4417 |
| Northampton County, Northampton : | |
| County Department of Corrections, : | |
| Todd Buskirk, Warden, and AFSCME : | |
| Local 2549, : | |
| Defendants : | |

_____

**DEFENDANTS' JOINT MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION IN LIMINE
TO EXCLUDE ANY AND ALL EVIDENCE PRIOR TO AUGUST 16, 1996
REGARDING DEFENDANTS' ALLEGED DISCRIMINATORY
CONDUCT, PRACTICES AND POLICIES**

Defendants, Northampton County ("County"), Northampton County Department of Corrections ("Prison"), Warden Todd Buskirk and AFSCME Local 2549 ("Union" or "Local 2549"), through their respective undersigned counsel, jointly submit this Memorandum of Law in support of their Motion in Limine seeking to exclude any and all evidence prior to August 16, 1996 concerning and/or related to Defendants' alleged discriminatory conduct, practices and policies.

I.   **FACTS**

Plaintiff Susanne Linn has been employed as a Corrections Officer by the Prison since June 23, 1992. Plaintiff Melissa Knesz has been employed as a

Corrections Officer by the Prison since April 17, 1998.  Throughout their employment with the Prison, Plaintiffs have been members of the Local 2549 bargaining unit.

In their First Amended Complaint, Plaintiffs alleged that all of the Defendants violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S. C. § 2000e, *et seq.* and the Pennsylvania Human Relations Act, 42 Pa. C.S. § 951 *et seq.* by discriminating against them, and other female corrections officers, in their terms and conditions of employment and creating a hostile work environment based upon their gender.  (Counts I and II.)  In addition, both alleged that all of the Defendants retaliated against them in violation of Title VII for asserting claims of discriminatory treatment by the Defendants.  (Count III.)  Further, the Plaintiffs alleged that the County Defendants violated 42 U.S.C. § 1983 by denying the Plaintiffs equal protection under the law and the right to exercise the First Amendment privilege to speak about employment discrimination.  (Counts IV and V.)  Additionally, Plaintiffs alleged a breach of the duty of fair representation against Defendant AFSCME Local 2549 pursuant to Pennsylvania's Public Employe Relations Act, (Act 195), 43 P.S. §1101.101 *et seq.* (Count VI).   (Exhibit 1, First Amended Complaint.)

On May 15, 1995, Officer Linn, on behalf of herself and the other female corrections officers, filed a class action complaint of gender discrimination with the Equal Employment Opportunity Commission ("EEOC") against the Prison and the Union (hereinafter the "1995 EEOC complaint").  (Exhibit 2, 1995 EEOC complaint; Exhibit 3, July 2, 2003 Linn Deposition Transcript ("Linn NT") pp. 601-02.)   The 1995 EEOC

complaint alleged the following discriminatory acts, policies and practices: inadequate hiring of females resulting in significantly more mandatory overtime for the female officers than the male officers, serious security breaches, stress and inequality; failure to permit male officers to perform the same duties as female officers when they work in Women's Quarters and Women's Work Release; and, rejection of requested vacation days and holidays. As a remedy, "[t]he female officers . . . seek that the administration cease and desist all forms of gender discrimination through staffing patterns, hiring practices and policies." (Exhibit 2.)

With regard to the Local 2549, the 1995 EEOC complaint alleged that the Union, in collusion with the Prison, willfully denied contractual rights to the female officers on issues such as vacation days, holidays, excessive mandatory overtime; serious security breaches in the Women's Quarters; and, inadequate staffing which resulted in stress and inequality for female officers. The 1995 EEOC complaint also alleged that the Union inadequately pursued the female officers' complaints and obtained only "half-hearted `quick fixes'" that failed to address the unequal treatment experienced by the female officers. (Exhibit 2.)

Officer Linn withdrew the May 15, 1995 EEOC complaint approximately one year after filing it, i.e., May 15, 1996. She testified that she withdrew the complaint because the EEOC had yet to investigate it and because the Commission attempted to turn the class action charge into an individual charge concerning her alone. (Exhibit 3, Linn NT, pp. 615-617.)

Subsequently, sometime late in 1996, Officer Linn, together with female officers Tara Fister and Barbara Morgan, met with an attorney to pursue their claims further. Officer Linn testified that she understood the attorney with whom the three Officers met to be an expert in sex discrimination matters. (Id., pp. 617-619.) Officer Linn testified further that she paid the attorney a $1,000.00 retainer fee "because she felt so strongly about the case." (Id., pp. 620-621.) The attorney requested she attempt to sign up other female officers to join in a lawsuit. When the other female officers would not join in the suit, allegedly out of fear, Officer Linn decided that she was not "going to be the fall guy and just do this alone." (Id.) Accordingly, Officer Linn obtained reimbursement of the $1,000.00 retainer fee she had paid to the attorney. (Id., pp. 621-622.)

Four-and-one-half years later, Officer Linn again pursued gender discrimination claims by filing a second EEOC complaint on March 28, 2001. The second complaint alleged Title VII violations against the County, the Prison and the Union. Officer Linn testified that she waited from late 1996 to March 2001 to file her second complaint because she feared retaliation. She admitted, however, that she understood at the time of filing the March 2001 EEOC complaint that she had recourse to address any retaliatory acts. (Id., pp. 622-623.) Officer Linn also testified that she decided to wait to file another EEOC complaint until other female officers indicated an interest in joining in a complaint. This interest, she testified, is "what she had been waiting for for years." (Id., pp. 627-628.)

Similar to her 1995 EEOC complaint, Officer Linn's 2001 EEOC complaint alleges gender discrimination. (Exhibit 4, Linn 2001 EEOC charge.) In addition, the 2001 complaint alleges hostile work environment and retaliation. On the same date that Officer Linn filed her 2001 EEOC complaint, Corrections Officers Cynthia Schultes and Jolene Gross, both female, filed similar complaints of gender discrimination, hostile work environment and retaliation. (Exhibit 5, Schultes 2001 EEOC charge; Exhibit 6, Green EEOC charge.) According to those complaints, Officer Gross has been employed by the Prison as a Corrections Officer since April 4, 1989 and Officer Schultes has been employed by the Prison as a Corrections Officer since January 8, 1996. A few weeks after Officers Linn, Schultes and Gross filed their EEOC complaints, Officer Knesz filed a similar charge of gender discrimination, hostile work environment, and retaliation. (Exhibit 7, Knesz 2001 EEOC charge.) All four EEOC charges were dually filed with the Pennsylvania Human Relations Commission ("PHRC").

Each Officer alleged continuing violations in their 2001 EEOC complaints, averring that they have been subjected to discriminatory conduct, practices, and policies by all of the Defendants since the beginning of their respective employment with the Prison. The discriminatory acts, policies and practices cited in all four 2001 EEOC complaints include: failure to hire sufficient number of female officers and staffing problems; lack of job opportunities, advancement and promotions for female officers; disallowing male officers to work alone in the Women's Quarters and Women's Work Release or to perform the same duties as the female officers who are routinely

assigned to these posts; unsafe working conditions in the Women's Quarters and Women's Work Release as opposed to the main prison where male inmates are housed and male officers are assigned; males supervisors undermining of discipline issued to inmates by female officers more often than discipline issued to inmates by male officers; female officers are not permitted to leave their post to address emergency medical and personal matters as male corrections officers are permitted to do; female officers' requests for vacation days and holidays are denied; female officers working in Women's Quarters and Women's Work Release do not receive meal and rest breaks; and, female officers are called pejorative names such as "bitch," "whore," "slut," and "cunt" by male officers and inmates.

In addition, the Officers allege in the 2001 EEOC complaint that the Union ignores their discrimination complaints; does not pursue their grievances or performs a perfunctory investigation of their complaints; advocates for the interests of the male officers to the detriment of the female officers; and, fails to respond either in a timely manner, or at all, to their complaints.

Plaintiffs received a right-to-sue letter from the EEOC and thereafter, filed the instant lawsuit. Neither Officer Gross nor Officer Schultes joined in this action or filed separate suits against the Defendants. Both Officer Gross and Officer Shultes testified at their depositions in this case that any concerns they had prior to an April 2001 arbitration were resolved. (Exhibit 8, Gross Deposition Transcript, pp. 3-7; Exhibit 9, Schultes Deposition Transcript, pp. 8-13.)

The following claims were raised in both the 1995 EEOC complaint and the March 2001 EEOC complaints: failure to hire; staffing problems; lack of job opportunities, promotions and/or advancement; excessive mandatory overtime; the limited assignment of male officers to posts in Women's Quarters and Women's Work Release and their limited duties when assigned; security and safety issues in the Women's facilities; rejection of vacation days and holidays; and, perfunctory or no representation by the Union regarding female officers grievances.  From June 1992, the date of Officer Linn's employment with the Prison, to the present, various Prison Wardens and Union officials have held office, most of whom are no longer employed by or associated with the Defendants.  (Exhibit 3, Linn NT, pp. 307, 367, 419, 485-492.)

Defendants seek to exclude all evidence concerning or related to any alleged discriminatory conduct, policies and procedures that predates August 16, 1996 as these claims were abandoned at that time and Defendants will be prejudiced if Plaintiffs are permitted to rely on these stale and abandoned claims to support their allegations of hostile work environment and continuing violations.

II. **ARGUMENT**

    A. **Because Plaintiff Linn Withdrew The 1995 EEOC Complaint Filed on Behalf of Herself and All Female Officers Prior to The Commission's**

**Final Determination and failed to Litigate These Claims Within the Limitations Period, Plaintiffs Should Be Precluded from Submitting Any and All Evidence Concerning or Related to Alleged Discriminatory Conduct, Policies and Practices that Occurred Prior to <u>August 16, 1996.</u>**

Pursuant to Title VII, an aggrieved person must file a complaint with the EEOC within 180 days after the alleged unlawful employment practice occurred. 42 U.S.C. § 2000e-5(1); <u>Robinson v. Dalton</u>, 107 F.3d 1018, 1020 (3rd Cir. 1997); <u>Oshiver v. Levin, Fishbein,Sedran & Berman</u>, 38 F.3d 1380, 1385 (3rd Cir. 1994). Similarly, the Pennsylvania Human Relations Act ("PHRA") requires an aggrieved person to file an administrative complaint with the Pennsylvania Human Relations Commission ("PHRC") within 180 days of the alleged act of discrimination. 43 Pa. C.S. §§ 959 (a) and 962. <u>Sameerah Richards v. Foulke Associates, Inc., et al.</u>, 151 F. Supp. 2d 610,613 (E.D. Pa. 2001). However, in a state such as Pennsylvania where an agency addresses charges of discrimination, the complainant has 300 days after the discriminatory act to file his or her claim of discrimination. <u>National Railroad Passenger Corporation v. Abner Morgan, Jr.</u>, 536 U.S. 101, 122 S.Ct. 2061, 2068 (2002). "[T]he purpose of requiring an aggrieved party to first resort to the EEOC is twofold: to give notice to the charged party and to provide an avenue for voluntary compliance without resort to litigation." <u>Glus v. G.C. Murphy Co.</u>, 562 F.2d 880,888 (3rd Cir. 1977). When an aggrieved person fails to file their charge with an administrative agency within the specified time period, their claim may be time barred. <u>Oshiver</u>, 38 F.3d at 1385-86.

Similarly, an aggrieved person who wishes to pursue their discrimination claim in a court must do so within 90 days of receiving a right-to-sue letter from an administrative agency.  42 U.S.C. § 2000e-5(f)(1); <u>Communications Workers of America v. New Jersey Dept. of Personnel</u>, 282 F.3d 213, 216 (3rd Cir. 2002); <u>Scary v. Philadelphia Gas Works</u>, 202 F.R.D. 148 (E.D. Pa. 2001).  Failure to do so constitutes a time bar to his or her claims.  <u>Id.</u>  If there is any ambiguity as to whether the EEOC has given notice of the right-to-sue in a Title VII action, the 90 day period of limitations commences when the aggrieved party knows the EEOC has completed its efforts on the complainant's behalf.  <u>Tatum v. Community Bank</u>, 866 F. Supp. 988, 994 (E.D. Tx. 1994).

The time period for filing a charge of discrimination is subject to the doctrine of equitable tolling.   <u>Morgan</u>,122 S. Ct. at 2068 (citing  <u>Zipes v. Trans World Airlines, Inc.</u>, 455 U.S. 385, 102 S. Ct. 1127, 1132 (1982)); <u>Oshiver</u>, 38 F.3d at 1387.  However, there is a limitation to the employment of this doctrines and courts are to employ this doctrine sparingly.  <u>Morgan</u>, at 2068.

Fear of retaliation is not a basis upon which a court may equitably toll a statute of limitations.  <u>Gabrielle F. Arizmendi v. Neal C. Lawson, et al.</u>, 914 F. Supp. 1157, 1162 (E.D. Pa. 1996) (citing  <u>Platt v. Burroughs Corp.</u>, 424 F. Supp. 1329, 1333 (E.D. Pa. 1976)).  Moreover, an aggrieved person who files a timely discrimination complaint and then withdraws it prior to a determination by an administrative agency has abandoned those claims and failed to exhaust their administrative remedies.

Therefore, such claims may be time barred if pursued at a later date. <u>Morgan</u>, at 2076-77; <u>Sameerah Richards v. Foulke Associates, Inc.</u>, 151 F. Supp. 2d at 613 (<u>citing</u> <u>Rivera V. United States Postal Service</u>, 830 F.2d 1037, 1039 (9th Cir. 1987) ("To withdraw is to abandon one's claims and to fail to exhaust one's remedies."); <u>see</u> <u>also</u> <u>Harris v. U.S.</u>, 919 F. Supp. 343, 345 (S.D. Cal. 1996) ("Claimants ... may not abandon their claims.") (citing <u>Vinieratos v. United States Department of Air Force</u>, 939 F.2d 762, 772 (9th Cir. 1991) ("[A]n administrative exhaustion requirement is meaningless if claimants may impede and abandon the administrative process and yet still be heard in the federal courts.").

Plaintiffs allege here that they have been subjected to a hostile work environment and that Defendants' discriminatory conduct, practices and policies are continuing[1]. While it is understood that an aggrieved person alleging such claims "may sue on claims that would ordinarily be time barred so long as they either are `sufficiently related' to incidents that fall within the statutory period or are part of a systematic policy or practice of discrimination that took place, at least in part, within the limitations," Plaintiffs should be precluded from introducing and relying upon any such claims that occurred prior to August 16, 1996 because those claims were abandoned at that time. <u>Morgan</u>, at 2068.

---

[1] Plaintiff Knesz was not hired until April 17, 1998. Any attempt by Plaintiff Knesz to rely upon Defendants' alleged discriminatory conduct, policies and practices occurring prior to her date of hire, and especially during the time period relevant to the 1995 EEOC complaint, should not be permitted as she was not employed during those periods of time and therefore, was not directly impacted by the alleged violations.

Officer Linn withdrew the May 15, 1995 EEOC complaint, filed on behalf of herself and other female officers, on or about May 15, 1996 because the EEOC had not yet investigated the officers' claims. The claims raised in 1996 mirror the claims raised in 2001. Officer Linn paid a retainer fee to an attorney with expertise in discrimination matters in late 1996 in order that she and the female officers could pursue those claims and because she strongly believed in the case. She then decided to forego those claims because she did not want to litigate the case without the participation of other female officers and feared retaliation. She filed the March 2001 complaint because other female officers expressed an interest in pursuing these claims at that time.

The 1995 claims were knowingly and voluntarily withdrawn and abandoned by August 16, 1996. No further effort was made to resolve those claims through administrative proceedings or in court in the preceding four-and-one-half years. Waiting four-and-one-half years to assert these same claims again to demonstrate a hostile work environment and evidence of a continuing violation constitutes a significant lack of due diligence and prejudices the Defendants ability to defend against these stale claims. Morgan, at 2076-77 ("An employer may raise a laches defense, which bars a plaintiff from maintaining a suit if he unreasonably delays in filing a suit and as a result harms the defendant."); Oshiver, at 1386-87 ("A claim occurs in a federal cause of action as soon as a potential claimant is aware, or should be aware, of the existence of a source of an injury. . . . A different rule . . . would require an insufficient degree of diligence on the part of the potential claimant."); Adrienne G. Stair v. Lehigh Valley

<u>Carpenters Local Union No. 600 of the Brotherhood of Carpenters and Joinders of America, et al.</u>, 813 F. Supp. 1116, 1119 (E.D.Pa. 1993) (Finding evidence of sexual harassment against a former employee which occurred over four years before the alleged sexual harassment of the plaintiff is too remote in time to support a hostile work environment claim.)

By withdrawing the 1995 EEOC complaint on May 15, 1996 and not pursuing those claims until March 2001, Plaintiffs have significantly handicapped the Defendants in their ability to present a defense in the present case. <u>Morgan</u>, at 2076-77. First, the withdrawal of the claims denied the Defendants the opportunity to take any corrective action subsequent to 1996. Second, the Prison Wardens and Union officials who held office at all times relevant to the 1995 complaint either no longer hold that office or are not employed by the Prison at this time. Thus, Defendants lack the history and personal knowledge necessary to defend against these old claims. (See Exhibit 3, Linn N.T., pp. 307, 367, 419, 484-492.) The fear of possible retaliation and the desire to have co-workers participate in the claims does not render the delay in pursuing the 1995 claims permissible nor do these reasons constitute an excuse sufficient to overcome the prejudice Defendants will suffer if Plaintiffs are permitted to proceed with these stale claims under the theories of hostile work environment and continuing violation. <u>Morgan</u>, at 2076-77; <u>Arizmendi v. Lawson, et al.</u>, 914 F. Supp. At 1162; <u>Platt v. Burroughs Corp.</u>, 424 F. Supp. At 1333. Therefore, Plaintiffs should be precluded from introducing and relying upon any and all evidence concerning or relating to the claims of gender discrimination abandoned on August 16, 1996.

### III. CONCLUSION

For all of the above-stated reasons, Plaintiffs should be precluded from introducing and relying upon any and all evidence prior to August 16, 1996, which is the last date upon which Plaintiffs were required to file a court action subsequent to the May 15, 1996 withdrawal of their claims from the EEOC .

Respectfully submitted by,

| | |
|---|---|
| WILLIG, WILLIAMS & DAVIDSON | MONTGOMERY, McCRACKEN, WALKER & RHOADS, LLP |
| | |
| _____ | _____ |
| LINDA M. MARTIN, ESQUIRE | DAVID J. MacMAIN, ESQUIRE |
| JOHN R. BIELSKI, ESQUIRE | L. KRISTEN BLANCHARD, ESQUIRE. |
| 1845 Walnut Street, 24th Floor | DENNIS G. YOUNG, JR., ESQUIRE |
| Philadelphia, PA 19103 | 123 South Broad Street |
| (Office)        (215) 656-3665 | Avenue of the Arts |
| (Facsimile)   (215) 561-5135 | Philadelphia, PA 19109 |
| | (Office)        (215) 772-1500 |
| Counsel for Defendant | (Facsimile)   (215) 772-7620 |
| AFSCME, Local 2549 | |
| | Counsel for Northampton County, Northampton County Department of Prisons, and Warden Todd Buskirk |

Dated: July 15, 2003

CERTIFICATE OF SERVICE

I, Linda M. Martin, Esquire hereby certify that on this 15th day of July, 2003, I caused to be served by first class mail, United States Postal Service, postage prepaid, a true and correct copy of Defendants Joint Motion in Limine to Exclude Evidence of Defendants Alleged Discriminatory Conduct, Policies and Practices Prior to August 16, 1996 and supporting Memorandum of Law the following:

> Anne P. Felker, Esquire
> 539 Center Street
> P.O. Box 190
> Bethlehem, PA 18016-0190
> *Counsel to Plaintiffs*
>
> Jordan Yeager, Esquire
> Boockvar & Yeager
> 2 West Butler Avenue
> Doylestown, PA 18901
> *Counsel to Plaintiffs*
>
> Robert L. Sharpe, Jr. Esquire
> 328 West Broad Street
> Quakertown, PA 18951
> *Counsel to Plaintiffs*
>
> L. Kristen Blanchard, Esquire
> Montgomery, McCracken, Walker & Rhoads, LLP
> 123 South Broad Street, Avenue of the Arts
> Philadelphia, PA 19109
> *Counsel to Defendants Northampton County,*
> *Northampton County Department of Corrections,*
> *and Todd Buskirk, Warden*

_____
LINDA M. MARTIN, ESQUIRE

Dated: July 15, 2003